# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

Michael E. Dale,                                                    Case No. 3:15CV1762

    Plaintiff

    v.                                                    **ORDER**

Selene Finance LP, et al.,

    Defendants

This is a case about alleged misconduct during state foreclosure proceedings.

The plaintiff, Michael Dale, purchased a home in Toledo, Ohio and executed a note and mortgage to secure the property. When he defaulted, U.S. Bank, which claimed to hold the note and mortgage, brought a foreclosure action.

While that case was pending, Dale learned from one of the defendants, Selene Finance LP, that it was the new servicer of his loan, and that defendant DLJ Mortgage Capital, Inc., held the note. Dale asked U.S. Bank and Selene for information establishing the chain of title, location, and existence of the note, but neither responded adequately.

U.S. Bank ultimately prevailed in the foreclosure case, notwithstanding Dale's claims the bank had no right to enforce the note and had submitted a false affidavit in aid of its foreclosure efforts.

Dale then filed this suit for violations of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601, *et seq.*; the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et*

*seq.*; and the Truth in Lending Act (TILA), 15 U.S.C. § 1601, *et seq*. He also brings state-law claims

for fraud, civil conspiracy, quiet title, and punitive damages.

Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1332(a)(1).[1]

Pending is the defendants' motion to dismiss for failure to state a claim. (Doc. 6).

For the reasons that follow, I remand Dale's quiet-title claim to state court, grant the motion

in part, and deny it in part.

## Background

Dale purchased a home in Toledo in 2005 and executed a promissory note and mortgage in

favor of Wilmington Finance. He defaulted in 2008, and GMAC Mortgage, LLC filed a foreclosure

action against Dale in the Common Pleas Court of Lucas County, Ohio.

Dale alleges that "[a] foreclosure judgment was granted [in that case] based on the affidavit

of Jeffrey Stephan," an alleged "robo-signor [*sic*] for GMAC[.]" (Doc. 1-3 at ¶¶15-16). But when

GMAC "was ordered to produce Mr. Stephan to take testimony regarding the execution of the

affidavit," the company refused to do so and dismissed its foreclosure action. (*Id.* at ¶17).

Thereafter, GMAC transferred the note and mortgage to U.S. Bank.

In September, 2012, U.S. Bank filed its own foreclosure action against Dale. *U.S. Bank v.

Dale, et al.*, No. CI-201205389 (Lucas Cnty. Common Pleas Ct.).[2] To support its claim, U.S. Bank

---

[1] Dale is an Ohio citizen, DLJ is a citizen of Delaware and New York, and Selene is a citizen of New York and Pennsylvania. (Doc. 1 at 2; Doc. 14 at 1-2).

[2] I have taken judicial notice of the docket entries in the underlying foreclosure case to confirm the fact and dates of various filings. *Beair v. Ohio Dep't of Rehab.*, --- F. Supp. 3d ----, 2016 WL 229403, *4 (N.D. Ohio 2016)

submitted an affidavit from Green Tree Servicing, LLC, the entity it enlisted to service Dale's loan. The affidavit stated U.S. Bank "had possession of the original note." (Doc. 1-3 at ¶23).

One week earlier, however, Dale had received a notice from Selene Finance "that they were [*sic*] the new servicer of his note." (*Id.* at ¶27). The notice explained that DLJ, rather than U.S. Bank, "was now the owner and possessor of the note and mortgage." (*Id.*).

Dale accordingly asked U.S. Bank about "the location, existence, and chain of title of the original promissory note," but the bank did not respond. (*Id.* at ¶23). Dale made similar requests of Selene, but its responses were inadequate to resolve the matter. (*Id.* at ¶48).

In April, 2013, Dale applied for a loan modification; the application "w[as] transferred to the new servicer" – Selene – "for processing." (*Id.* at ¶39). Selene ultimately determined, in June, 2013, Dale's loan-modification "packet was not eligible for modification." (*Id.* at ¶44).

Dale alleges that the "National Mortgage Settlement of February 2012" prohibits lenders and servicers from "proceeding to judgment or sale" while a loan-modification application is pending. (*Id.* at ¶36). Nevertheless, U.S. Bank moved for summary judgment before Selene processed Dale's application. The Common Pleas Court granted the motion in October, 2013; Dale did not appeal.

The next month, Dale moved to vacate the foreclosure judgment. He filed an amended motion to vacate in March, 2014, alleging: 1) U.S. Bank was not the real party-in-interest and was therefore not entitled to bring the foreclosure action; 2) the bank had submitted a false affidavit designed to mislead the court; and 3) Dale was a victim of "predatory lending practices." (Doc. 6-6 at 4).

The Common Pleas Court denied the motion in May, 2014. It determined there was "no evidence to support [Dale's] claim that plaintiff submitted fraudulent statements in the affidavit in

3

support of its motion for summary judgment." (Doc. 6-7 at 4). The court also found U.S. Bank had standing to prosecute the case even after it transferred its interest in the note and mortgage to DLJ. (*Id.* at 5); *see* Ohio R. Civ. P. 25 ("In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party.").

Dale did not appeal the denial of his Rule 60(B) motion.

In June, 2014, Dale moved to dismiss and void the foreclosure judgment on the ground U.S. Bank was a foreign entity that had not registered to do business in Ohio. The Common Pleas Court denied this motion, and the Court of Appeals of Ohio dismissed Dale's appeal for want of a final, appealable order.

In September, 2014, U.S. Bank purchased Dale's former home at a sheriff's sale.

Dale brought this suit in state court in July, 2015. Selene and DLJ removed the case to this court. The complaint raises seven claims:

1.  A violation of RESPA for not responding adequately to Dale's Qualified Written Requests;

2.  An FDCPA violation for trying to collect a debt in which the defendants had no interest and making false statements in furtherance of their collection efforts;

3.  A TILA violation for failing to provide Dale with the name, phone number, and address of the mortgage owner;

4.  A civil-conspiracy claim based on the defendants' scheme to "wrongfully foreclose upon Mr. Dale's home";

5.  A fraud claim based on defendants' submission of "fraudulent documents and statements to Plaintiff and the Lucas County Common Pleas Court" with the intent to "depriv[e] Dale of his property";

6.  A quiet-title claim; and

4

7.    A violation of the 2012 National Mortgage Settlement by proceeding to judgment while a loan-modification request was pending.

Dale also alleges the defendants' employees and agents, whom he has named as John Doe defendants 1-20, are liable for these violations on a theory of respondeat superior, and that he is entitled to punitive damages.[3]

## Standard of Review

A complaint must contain a "short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In ruling on a motion to dismiss, I may consider "the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

### A. Subject-Matter Jurisdiction

The defendants first argue I lack jurisdiction to adjudicate Dale's quiet-title claim.

They contend Dale can prevail on this claim only if I conclude "the state court wrongly entered judgment in the foreclosure action, and thus wrongfully allowed the property to be sold to

---

[3] Dale has withdrawn a second RESPA claim and a claim under the Ohio Consumer Sales Practices Act. (Doc. 9 at 10-11, 16).

5

DLJ." (Doc. 6 at 13). Because I would be sitting, in essence, as an appellate tribunal reviewing the state-court judgment, the defendants contend the *Rooker-Feldman* doctrine bars me from deciding this claim.

In response, Dale invokes "the fraud exception" to the *Rooker-Feldman* doctrine. (Doc. 9 at 10). Relying on *In re Sun Valley Foods Co.*, 801 F.2d 186, 189 (6th Cir. 1986), Dale contends that a federal district court "may entertain a collateral attack on a state court judgment which is alleged to have been procured through fraud, deception, accident, or mistake[.]"

According to Dale, U.S. Bank – which is DLJ's predecessor-in-interest – committed fraud in the Lucas County foreclosure action by: 1) filing an affidavit stating, contrary to fact, it had the right to foreclose on Dale's home; 2) moving to foreclose while Dale's modification application was pending; and 3) transferring its rights to enforce Dale's promissory note to DLJ without disclosing that fact to the state court.

This "fraudulent" conduct, Dale contends, opens up the foreclosure judgment to a collateral attack in this court.

## 1. *Rooker-Feldman*

The *Rooker-Feldman* doctrine holds that "a federal district court lacks subject matter jurisdiction to review a state court decision." *Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 241 F. App'x 285, 287 (6th Cir. 2007).

The doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

6

Whether the doctrine applies depends on "the source of the injury the plaintiff alleges in the federal complaint." *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006).

"If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then plaintiff asserts an independent claim." *Id.*

### 2. Application to the Quiet-Title Claim

Dale "disputes the validity of Defendant DLJ Mortgage Capital's title" to his former home, and he alleges he "is the rightful owner" of the property. (Doc. 1-3 at ¶¶108, 110).

The injury he complains of is his present lack of title to, and ownership of, his former home. And the source of that injury is the state-court foreclosure judgment, which reflects that U.S. Bank is the property's rightful owner.

There is no question, then, that Dale's quiet-title claim identifies the state-court foreclosure judgment as the source of his injury. *E.g.*, *Battah v. ResMAE Mortg. Corp.*, 746 F. Supp. 2d 869, 874 (E.D. Mich. 2010) (*Rooker-Feldman* divested court of jurisdiction over quiet-title claim); *Farrell v. U.S. Bank Nat'l Ass'n*, 2015 WL 1511004, *7 (E.D. Mich.) ("Since this Court cannot void the foreclosure or grant quiet title to the Property without reversing the relief granted by the state court, Counts 10 and 11 of the instant complaint are barred by *Rooker-Feldman*."); *Colbert v. Fed. Nat'l Mortg. Ass'n*, 2013 WL 1629305, *7 (E.D. Mich.) (dismissing plaintiff's quiet-title claim designed "to obtain reversal of a state court decision" in favor of defendant).

The closer question is whether this case fits within the so-called fraud exception.

As Dale notes, the Sixth Circuit concluded in *In re Sun Valley Foods* that, the *Rooker-Feldman* doctrine notwithstanding, "[a] federal court may entertain a collateral attack on a state court judgment which is alleged to have been procured through fraud, deception, accident, or mistake[.]"

Since recognizing this exception nearly thirty years ago, the Sixth Circuit has, in cases involving the exception, yet to find it applicable. *E.g.*, *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 301 (6th Cir. 2005); *Kafele v. Lerner, Sampson & Rothfuss, L.P.A.*, 161 F. App'x 487, 490-91 (6th Cir. 2005); *Forsyth v. Brigner*, 156 F.3d 1229, *2 (6th Cir. 1998) (Table); *Keplinger v. Wilson*, 12 F.3d 212, *2 (6th Cir. 1996) (Table); *Washington v. Burlington Coat Factory Warehouse, Inc.*, 954 F.2d 725, *1 (6th Cir. 1992) (Table).

For his part, Dale has cited no case in which a federal court has, in similar circumstances, disregarded the *Rooker-Feldman* doctrine and overturned a state-court judgment on the ground it was a product of fraud.[4]

The absence of any Sixth Circuit case applying the fraud exception, and the court's more recent case law, lead me to question the continuing validity of *In re Sun Valley Foods*.

After all, the court emphasized in *McCormick*, *supra*, 451 F.3d at 393, that the dispositive question, for purposes of the *Rooker-Feldman* doctrine, is the source of the plaintiff's injury. If the source is a state-court judgment, then a federal court has no jurisdiction to hear the claim. But if the plaintiff can avoid that result by alleging some fraud, deception, accident, or mistake contributed to a state-court judgment, there is a wide road indeed around the *Rooker-Feldman* doctrine.

---

[4] The defendants' argument against invoking the fraud exception is that Dale's allegations establish merely that the state court's foreclosure judgment was mistaken, not that it was a product of fraud. (Doc. 10 at 2). But that approach, which either minimizes or ignores most of the wrongdoing in which the defendants allegedly engaged, is inconsistent with the standard I must apply in ruling on a 12(b)(6) motion.

8

Moreover, even without *In re Sun Valley Foods*, plaintiffs like Dale can sue in federal court for fraud and wrongdoing that allegedly produced a state-court judgment. *McCormick*, *supra*, 451 F.3d at 392 (district court had jurisdiction over claims that state-court judgments "were procured by certain Defendants through fraud, misrepresentation, or other improper means"); *Brown v. First Nationwide Mortg. Corp.*, 206 F. App'x 436, 440 (6th Cir. 2006) ("Brown's claim that the mortgage foreclosure decree was procured by fraud is not barred by *Rooker-Feldman*.").

This is so because, when a plaintiff complains about his opponent's misconduct in a prior state-court proceeding, the source of his injury is the misconduct itself, rather than the judgment the misconduct produced. *Cf. Rothing v. Lambert*, 2014 WL 2611324, *2 (D. Mont.) ("*Rooker-Feldman* does not prevent a party from attacking opposing parties in state court proceedings or alleging that the methods and evidence were the product of fraud or conspiracy, regardless of whether his success on those claims might call the veracity of the state court judgments into question.").

All that being said, I need not resolve whether *In re Sun Valley Foods* remains good law. Even assuming the exception retains its validity, it would not apply here because Dale has already presented his fraud allegations to the state court, and the state court rejected those claims.

As another court in this Circuit has explained:

> This is not a case where the fraud allegation is a "new" claim that was not previously litigated in prior proceedings. In other words, [the plaintiff] is not newly asserting that the state-court judgment was procured through fraud; instead, he is again asserting that the Defendants perpetrated fraud as to their ownership of the mortgage and, therefore, did not have standing to bring the state foreclosure action. The *Rooker-Feldman* doctrine . . . bar[s] Plaintiff from relitigating this standing/fraud issue.

*Bell v. Countrywide Home Loans, Inc.*, 2014 WL 2618618, *3 (W.D. Ky. 2014); *accord Velasquez v. S. Fla. Fed. Credit Union*, 546 F. App'x 854, 859 (11th Cir. 2013) (declining to adopt fraud

9

exception to *Rooker-Feldman* doctrine, but concluding *In re Sun Valley Foods* would not apply where plaintiff "presented evidence of fraud" to state court, "and that court was unconvinced by the evidence").

Because Dale presented the state court with his claim that U.S. Bank was not entitled to foreclose on his property, and because the state court held U.S. Bank's conduct did not amount to fraud or warrant vacatur of the foreclosure judgment, I may not entertain his collateral attack on the state-court judgment.

### 3. Disposition

The defendants have asked me to dismiss the quiet-title claim both for lack of jurisdiction and "with prejudice." (Doc. 6 at 15, 28). Neither approach is permissible, however.

The removal statute provides that, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to state court. 28 U.S.C. § 1447(c).

"The *Rooker-Feldman* doctrine is jurisdictional in nature, and the words of § 1447(c) are unambiguous. Because the Court lacks jurisdiction over [Dale's quiet-title claim], it must remand [it] and is precluded from addressing the [defendants'] arguments and dismissing [the claim] on [its] merits." *Battah*, *supra*, 746 F. Supp. 2d at 874; *accord Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014) (remanding quiet-title claim to state court after concluding *Rooker-Feldman* doctrine barred court from adjudicating claim); *Mills v. Harmon Law Offices, P.C.*, 344 F.3d 42, 45-46 (1st Cir. 2003) (same).

For these reasons, I will remand Dale's quiet-title claim to the Lucas County Common Pleas Court.

10

## B. Claim Preclusion

The defendants next argue that Ohio's claim-preclusion rules bar Dale's FDCPA claim.[5]

In support of that claim, Dale alleges that "[d]efendants have on numerous occasions, attempted to collect on a debt under which they have no right or interest," and that "[d]efendants have made numerous fraudulent statements in furtherance of this collection action." (Doc. 1-1 at ¶¶79-80).

For the reasons that follow, I conclude claim preclusion bars Dale's FDCPA claim to the extent he bases it on conduct occurring within the foreclosure litigation. Claim preclusion does not, however, bar the claim to the extent Dale complains of conduct occurring outside the foreclosure action.

"Federal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state." *Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007). "[W]hen considering the preclusive effect of a state court judgment," the federal court "look[s] to the law of that state." *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 650 (6th Cir. 2007).

Under Ohio law, "[t]he general rule of claim preclusion or res judicata is that a valid and final judgment on a claim precludes a second action on that claim or any part of it. [It] applies not only to bar the parties from re-litigating issues that were actually litigated, but also to bar them from re-litigating issues that could have been raised in an earlier action." *Young v. Fannie Mae*, 2013 WL 1284232, *2 (N.D. Ohio) (Pearson, J.) (internal quotation marks omitted).

---

[5] As I explain below, Dale has not alleged plausible claims of fraud, civil conspiracy, or dual-tracking. I therefore decline to consider the defendants' claim-preclusion defense as to those claims.

"[C]laim preclusion under Ohio law has four elements: (1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action." *Frazier v. Matrix Acquisitions, LLC*, 873 F. Supp. 2d 897, 900-01 (N.D. Ohio 2012) (Lioi, J.) (internal quotation marks omitted).

### 1. Prior Judgment on the Merits

First, contrary to Dale's argument, there is a final judgment on the merits.

The Lucas County Common Pleas court entered judgment in favor of U.S. Bank in the foreclosure case on October 24, 2013, and Dale did not appeal. Thereafter, the Common Pleas Court denied Dale's amended motion to vacate under Rule 60(B), and Dale did not appeal.

"A judgment entry denying a Civ. R. 60(B) motion for relief from judgment is final and appealable, and, where a party fails to file a timely appeal . . . *res judicata* applies to bar further litigation of the issues." *GMAC Mortg., LLC v. Lee*, 2012-Ohio-1157, ¶19 (Ohio App.); *see also Smith v. Lerner, Sampson, & Rothfuss*, 2015 WL 1809311, *5 (N.D. Ohio) (Nugent, J.).

For these reasons, the first requirement for claim preclusion exists.

### 2. Same Parties or Their Privies

Second, this case involves one party from the foreclosure case and two parties in privity with the second party to that case. Dale, of course, was the defendant in the state-court foreclosure action, and he is the plaintiff here.

Although DLJ was not a party to that action, it is in privity with the defendant in that case, U.S. Bank. Ohio law provides that "[a]n assignee of an interest in a promissory note and mortgage

12

is in privity with its assignor for purposes of res judicata." *EMC Mortg. Corp. v. Jenkins*, 2005-Ohio-5799, ¶20 (Ohio App.). Thus, DLJ, as the assignee of U.S. Bank's interest in the note and mortgage, is in privity with U.S. Bank for claim-preclusion purposes.

Likewise, Selene Finance was not a party to the underlying foreclosure action. Nor, contrary to defendants' representation, was it "involved in prosecuting the state court foreclosure." (Doc. 6 at 17).

However, Selene is DLJ's agent for purposes of collecting payments Dale owed on the note and mortgage. It is therefore in privity with U.S. Bank, as DLJ's predecessor-in-interest, based on a mutuality of interest in the foreclosure judgment. *O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St. 3d 59, 62 (2007) (mutuality of interest may establish privity if "the person taking advantage of the judgment would have been bound by it had the result been the opposite"); *see also Duke v. Morningstar Mortg., L.L.C.*, 893 F. Supp. 2d 1238, 1247 (N.D. Ala. 2012) (agreeing that "there is privity between a servicer and a lender because they share an identity of interests in the subject matter of the litigation," but concluding principle was inapplicable because of "a separate peculiarity" of Alabama law); *Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d 413, 423 (S.D.N.Y. 2008) (loan servicer and mortgagee were in privity for res-judicata purposes).

Accordingly, the second requirement for claim preclusion exists.

### 3. Claim That Was or Could Have Been Raised Previously

Third, Dale could have raised his FDCPA claim, based on the defendants' lack of a right to enforce the note and the false statements they allegedly made, in the state-court litigation.

"The scope of claims covered by this prong is quite broad. In fact, the breadth of this prong serves to prevent "not only relitigation of a claim previously adjudicated; it also precludes litigation

of a claim or defense that should have been raised, but was not, in the prior suit." *Frazier*, *supra*, 873 F. Supp. 2d at 902 (internal alterations and emphasis omitted).

First, Dale argued in state court that U.S. Bank had submitted a fraudulent affidavit in support of its foreclosure efforts. He also argued U.S. Bank had no right to foreclose on his property, as it did not hold the promissory note or mortgage. The state court rejected these arguments, however.

Accordingly, to the extent Dale seeks to hold DLJ, as U.S. Bank's successor-in-interest, and Selene, as DLJ's agent and privy, liable under the FDCPA for trying to collect a debt in which they had no legal interest, claim preclusion bars him from doing so. *Riddle v. Wells Fargo Bank Nat'l Assoc.*, 2015 WL 6680885, *6 (S.D. Ohio) (claim-preclusion rules barred FDCPA claim based on lack of ownership of promissory note where plaintiff could have raised, but failed to raise, that claim in underlying foreclosure action).

### 4. Same Transaction

Fourth, Dale's FDCPA claim arises from the same transaction as the foreclosure case.

The subject matter of the Lucas County foreclosure case was the liability of the parties on the note and mortgage Dale executed. It then expanded when Dale alleged U.S. Bank had procured the judgment by fraud and that it had no interest in the promissory note and mortgage. Because the foreclosure claim and the FDCPA claim arise from the same nucleus of operative facts, the final element of claim preclusion exists.

*   *   *

For these reasons, I conclude claim-preclusion rules bar Dale's claim that defendants' conduct in the underlying foreclosure case violated the FDCPA.

14

## C. RESPA

The defendants argue I should dismiss Dale's RESPA claim because his complaint fails to allege he submitted his Qualified Written Requests (QWR) to the address Selene had designated to receive such requests.

Dale responds that Selene in fact delegated two addresses to receive QWRs, and that "it must honor those requests if it designates more than one address." (Doc. 9 at 14).

### 1. Duty to Respond to QWRs

A QWR is a correspondence that "identifies a borrower's account and 'includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.'" *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 181 (2d Cir. 2014) (quoting 12 U.S.C. § 2605(e)(1)(B)(ii)).

"Under RESPA, a servicer of a federally related mortgage loan may be liable for damages to a borrower if it fails to adequately respond to a qualified written request[.]" *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1145 (10th Cir. 2013).

At the time Dale submitted the alleged QWRs (February 18 and June 25, 2014), RESPA permitted a loan servicer to designate a specific address to which a borrower must submit a QWR. *See* 24 C.F.R. § 3500.21(e)(1) ("a servicer may establish a separate and exclusive office and address for the receipt and handling of qualified written requests").[6]

"The final rulemaking notice for the operative regulation, Regulation X, explained that if a servicer establishes a designated QWR address, 'then the borrower must deliver its request to that

---

[6] The current regulations make clear that if a servicer establishes a designated address for QWRs, "the borrower must use the established address to assert an error." 12 C.F.R. § 1024.35(c).

office in order for the inquiry to be a [QWR].'" *Roth*, *supra*, 756 F.3d at 181 (quoting 59 Fed. Reg. 65,442, 65,446)).

Most courts have concluded that, "under § 3500.21(e)(1), the servicer's response obligation under RESPA is *only* triggered when the QWR is sent to the designated address." *McMillen v. Resurgent Capital Servs.*, 2015 WL 5308236, *6 (S.D. Ohio) (internal quotation marks omitted; emphasis in original); *accord Roth*, *supra*, 756 F.3d at 181; *Berneike*, *supra*, 708 F.3d at 1146.

I agree with these decisions and hold that Dale cannot state a claim without alleging he submitted the alleged QWRs to the designated address.

### 2. Application to Dale's Case

An exhibit to the defendants' motion shows that Selene designated an address to receive QWRs: Selene Finance LP, Attention Customer Service Department, P.O. Box 422039, Houston, TX 77242-4239. (Doc. 6-13 at 2).[7] Furthermore, the exhibits to Dale's complaint reflect that his lawyer did not send the correspondence to that address.

Dale counters that Selene's website designated a second address to receive QWRs – Selene Finance, Attn: Escalation Agent, 9900 Richmond Avenue, Suite 400, South Houston, TX 77042-8500 – and that his lawyer sent the inquiries to that address.

The defendants' reply brief identifies the website in question, but they have not convinced me I can properly consider the content of the website (which does not appear to support Dale's claim there was a second address for QWRs) in ruling on the motion to dismiss. Given the apparent factual

---

[7] It is proper for me to consider this exhibit because Dale refers to it in his complaint, *see* Doc. 1-3 at ¶¶27, 29-30, and it is central to his RESPA claim. *Berneike*, *supra*, 708 F.3d at 1146.

dispute as to whether Dale used a designated QWR address, I will deny the motion as to Dale's RESPA claim.

### D. TILA

Defendants next argue that Dale's TILA claims are untimely under the one-year limitations period.

Dale alleges the defendants violated TILA by twice failing to respond to requests to identify the owner of his mortgage and the master servicer. Dale made these requests on February 18, 2014, and March 12, 2014, and Selene sent the allegedly inadequate responses on June 25, 2014, and July 21, 2014.

Because Dale did not file suit until July 28, 2015, the defendants contend his claims are untimely.

Dale responds that the one-year limitations period runs, not from the date Selene sent its responses, but from the date on which he received those responses. Because he received Selene's second response on August 1, 2014, Dale contends that his claim with respect to the second request for information is timely.

"[A]ny creditor who fails to comply with any requirement imposed [by TILA] . . . including any requirement under . . . subsection (f) or (g) of section 1641 . . . is liable[.]" 15 U.S.C. § 1640(a).

Subsection (f) of § 1641 provides that, "[u]pon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation." 15 U.S.C. § 1641(f)(2).

17

"Although the Act does not contain a time limit for providing the information, courts have concluded that a violation occurs either after a reasonable time has passed since the obligor sent a request without the servicer having sent any response, or . . . when the servicer sends an inadequate response to that request." *Marais v. Chase Home Fin., LLC*, 2012 WL 4475766, *3 (S.D. Ohio), *rev'd in part on other grounds*, 736 F.3d 711 (6th Cir. 2013); *accord Bradford v. HSBC Mortg. Corp.*, 829 F. Supp. 2d 340, 352 (E.D. Va. 2011).

An action for a violation of § 1641(f)(2) "may be brought . . . within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e).

Given the language of § 1640(e), I conclude the one-year limitations period ran from the dates Selene sent its responses, not when Dale received them. *E.g.*, *Pike v. Bank of America, N.A.*, 2015 WL 3824390, *7 (N.D. Ohio) (Nugent, J.) (limitations period for TILA claim "began to run on September 25, 2013, as that is when the alleged inadequate response was sent").

Dale has not cited any cases to support his argument that the limitations period did not start running until he received the response, and the statement in his opposition brief that "[d]efendants' [*sic*] admit that the statute begins to run when the inadequate response is 'received,'" (Doc. 9 at 16), is entirely unfounded.

My own research turned up a few cases supporting Dale's argument. *E.g.*, *Stephenson v. Chase Home Fin., LLC*, 2011 WL 2006117, *3 (S.D. Cal.). But I believe such cases, which effectively employ a discovery rule to determine when the limitations period begins, reached the wrong result.

TILA's statute of limitations identifies the triggering event as the date the violation "occurs," rather than when the action "accrues." When Congress uses that type of language, the federal

18

discovery rule is inapplicable. *Veres v. Wells Fargo Bank, N.A.*, 2014 WL 1133186, *8 (D. Colo.) ("Because Congress explicitly stated the statute of limitations' triggering event, the Court finds that the federal discovery rule is inapplicable to the TILA statute of repose.").

Because Dale did not bring his TILA claims within one year of the date Selene sent its responses, I will dismiss those claims with prejudice.

### E. FDCPA

The FDCPA prohibits a debt collector from using "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

"In order to establish a claim under § 1692e: (1) plaintiff must be a consumer as defined by the Act; (2) the debt must arises out of transactions which are primarily for personal, family or household purposes; (3) defendant must be a debt collector as defined by the Act; and (4) defendant must have violated § 1692e's prohibitions. *Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012).

The defendants argue I should dismiss the FDCPA claim because Dale's complaint does not identify the false statements they allegedly made in furtherance of collecting a debt.

Dale responds that his complaint "show[s] that Selene made false and deceptive statements to Dale," and that "[d]efendants [*sic*] denial of that fact is the purpose of an answer." (Doc. 9 at 16).

Dale's argument misses the point.

The defendants have not (at this stage in the litigation, anyway) denied making false or fraudulent statements. They have argued Dale's complaint does not identify the fraudulent statement they allegedly made. And, as the defendants have correctly observed, Dale's complaint does not

19

identify any false or fraudulent statements either of the defendants made that are not connected with the state-court foreclosure action.

Because the complaint does not plausibly allege Selene or DLJ violated the FDCPA, I will dismiss the claim with prejudice.

### F. Fraud

The defendants next contend I should dismiss Dale's fraud claim because: 1) Ohio's witness-immunity doctrine bars the claim; 2) Dale has not alleged the time or place of any misleading statements or false representations; and 3) Dale has not alleged he justifiably relied on any such misrepresentation.

"Under Ohio law, the elements of fraud are (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance." *Aetna Cas. & Sur. Co. v. Leahy Const. Co.*, 219 F.3d 519, 540 (6th Cir. 2000).

The plaintiff must plead fraud with particularity. Fed. R. Civ. P. 9(b).

"Specifically, a plaintiff must allege the time, place, and content of the alleged misrepresentation [on which he relied]; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *U.S. ex rel. Sheldon v. Kettering Health Network*, --- F.3d ----, 2016 WL 861399, *6 (6th Cir.).

### 1. Witness-Immunity Doctrine

As the defendants correctly observe, false testimony in a judicial proceeding cannot give rise to a claim for fraud. *Costell v. Toledo Hosp.*, 38 Ohio St. 3d 221, 223-24 (1988); *Schmidt v. State Aerial Farm Statistics, Inc.*, 62 Ohio App. 2d 48, 50-51 (1978).

The rule applies not only to live testimony, but also to statements in affidavits and other court filings. *Forsyth v. Hall*, 1997 WL 165432, *2 (Ohio App.) (plaintiff failed to state fraud claim based on "false and/or fraudulent statements [defendant] made in affidavits filed in [separate divorce] proceeding and in the testimony [defendant] gave at trial").

Dale appears to base his fraud claim, in part, on false statements the defendants or their privies allegedly made in the underlying foreclosure case. (Doc. 9 at 16) ("Dale does allege that false statements were made to the Lucas County Common Pleas Court.").

Accordingly, the witness-immunity doctrine bars Dale's fraud claim to the extent he relies on false statements made in the state-court action.[8]

### 2. Plausibility

Dale's claim also depends on "false and misleading statements [that] were made to him," purportedly outside of the foreclosure litigation.

Inexplicably, Dale fails to identify what allegedly fraudulent statements either DLJ or Selene made. (Doc. 1-3 at ¶104) ("Defendant's [*sic*] through their agents, submitted fraudulent documents

---

[8] Even assuming the witness-immunity doctrine were inapplicable, Dale has not alleged he justifiably relied on the fraudulent statements made in court. Indeed, the complaint suggests only that U.S. Bank submitted the false affidavit to mislead the court, not Dale, into entering a foreclosure judgment in its favor. *Perkins v. Wells Fargo Bank, N.A.*, 2012 WL 5077712, *7 (S.D. Ohio) (dismissing fraud claims where defendants intended allegedly false affidavits to mislead state court, not plaintiffs).

and statements to Plaintiff"). Nor has he complied with the specificity requirement of Rule 9(b). For these reasons alone, I will dismiss the fraud claim with prejudice.

Furthermore, Dale has not alleged that he justifiably relied on any misrepresentation that either defendant made. The complaint refers to only one statement that either defendant in this case made: Selene's representation, in the Transfer of Service notice, that it was the new servicer of Dale's loan, and that DLJ was the new holder of the note. (Doc. 1-1 at ¶¶27-29). Assuming that this is one of the statements supporting the fraud claim,[9] Dale nowhere explains why he relied on it or what action he took based thereon.

For this reason too, I will dismiss the fraud claim with prejudice.

### G. Civil Conspiracy

The defendants argue that I should dismiss Dale's civil-conspiracy claim because the complaint fails to allege an unlawful act independent of the alleged conspiracy.

According to the defendants, the only such independent act Dale alleges is the wrongful or fraudulent foreclosure. But because the complaint fails to state a plausible fraud claim, defendants contend the conspiracy claim likewise fails.

Dale does not dispute that his conspiracy claim cannot survive unless he alleges an unlawful act independent of the conspiracy. But he argues his fraud allegations are sufficient to state a claim.

"To establish a claim of civil conspiracy, a plaintiff must prove: (1) a malicious combination; (2) involving two or more persons; (3) causing injury to person or property; and (4) the existence of

---

[9] I am not at all sure this is a sound assumption, given Dale's contradictory allegation that "DLJ mortgage was the owner of the note and mortgage." (Doc. 1-3 at ¶53).

an unlawful act independent from the conspiracy itself." *Boomershine v. Lifetime Capital, Inc.*, 2008-Ohio-14, ¶22 (Ohio App.).

For reasons set forth above, Dale has not alleged a plausible fraud claim. Accordingly, his claim that defendants conspired to foreclose on his home without the right to do so likewise fails. *Cf. Rece v. Dominion Homes, Inc.*, 2008-Ohio-24, ¶40 (Ohio App.) ("As the [plaintiffs'] claims for fraud and negligent misrepresentation fail as a matter of law, their claim for civil conspiracy necessarily fails.").

## H. Dual-Tracking

Defendants contend I should dismiss Dale's dual-tracking claim because: 1) the National Mortgage Settlement does not create a private right of action for borrowers; and 2) in any event, Dale has not alleged either DLJ or Selene were parties to the settlement agreement.

Dale's response ignores the private-right-of-action question, perhaps because he understands, as I do, that it is both dispositive and well taken.

As Dale has given me no reason to reach a contrary result, I repeat the discussion of this issue in the court's decision in *Rehbein v. CitiMortgage, Inc.*, 937 F. Supp. 2d 753, 760-61 (E.D. Va. 2013), which I find thoroughly persuasive:

> On March 12, 2012, the United States Department of Justice and the attorneys general of forty-nine states and the District of Columbia filed a joint complaint against five mortgage servicers . . . alleging various foreclosure abuses.
>
> Shortly after the complaint was filed, the parties reached a settlement (the "National Mortgage Settlement"), which was memorialized by a Consent Judgment ("Consent Judgment") entered on April 4, 2012, by the United States District Court for the District of Columbia. Citi's Mem. Supp. Mot. Dismiss, Ex. 5. The Consent Judgment sets forth servicing standards aimed at protecting homeowners. The mortgage servicers must comply with these standards.

23

Consent judgments and decrees are "to be construed for enforcement purposes basically as a contract." *United States v. ITT Cont. Baking Co.*, 420 U.S. 223, 238 (1975); *see also Thompson v. U.S. Dep't of Housing & Urban Dev.*, 404 F.3d 821, 821, 832 (4th Cir. 2005) ("Issues of interpretation and enforcement of a consent decree typically are subject to traditional rules of contract interpretation...."); *Bell v. Countrywide Bank*, No. 2:11cv271, 2012 WL 3073108, at *2–3 (D. Utah July 26, 2012) (analyzing the National Mortgage Settlement as a contract). It is a basic tenet of contract law that "[a] nonparty becomes legally entitled to a benefit promised in a contract ... only if the contracting parties so intend." *Astra USA, Inc. v. Santa Clara Cnty.*, —— U.S. ——, 131 S. Ct. 1342, 1347 (2011). As a general matter, consent decrees are "not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefited [*sic*] by it." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 750 (1975). In order to have enforcement rights, third parties to a consent decree must demonstrate that they are intended beneficiaries, as opposed to merely incidental beneficiaries. *SEC v. Prudential Sec.*, 136 F.3d 153, 158 (D.C. Cir. 1998).

"[B]ecause the government usually acts in the general public interest, third parties [to consent decrees involving the government] are presumed to be incidental beneficiaries," not intended beneficiaries. *Id.*; *see also* Restatement (Second) of Contracts § 313 cmt. a (1981) ("Government contracts often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested."). To overcome this presumption and qualify as an intended beneficiary, the third party must demonstrate that the contracting parties "intended the third party to be able to sue to protect [the] benefit" the consent judgment conferred on the third party; it is not sufficient to show simply that the parties had some intent to benefit the third party. *Prudential Sec.*, 136 F.3d at 159.

Although the National Mortgage Settlement certainly aims to benefit to individual borrowers through the implementation of more stringent servicing standards, Rehbein has alleged no facts from which the court could conclude that these borrowers are intended beneficiaries rather than merely incidental beneficiaries. The language of the Consent Judgment indicates that the parties to the agreement did not intend the individual borrowers to be able to sue to protect the benefits the consent judgment confers.

Because Dale has alleged no facts that would overcome the presumption that he was merely an incidental beneficiary, I will dismiss the dual-tracking claim with prejudice. *Frangos v. Bank of Am., N.A.*, 2014 WL 3699490, *4 (D.N.H.); *Weston v. Wells Fargo Bank, N.A.*, 2014 WL 811546, *4 (W.D. Tex.).

24

### I. Respondeat Superior

Dale raises vicarious-liability claims against the defendants for the conduct of John Does 1-20, who are the defendants' agents and employees. I will dismiss this claim as a stand-alone ground for relief, though the dismissal is without prejudice to Dale's ability to prove defendants are liable on respondeat-superior principles for their agents' and employees' alleged RESPA violation.

### J. Punitive Damages

"No civil action may be maintained simply for punitive damages. Rather, punitive damages are awarded as a mere incident of the cause of action in which they are sought." *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St. 3d 638, 650 (Ohio 1994). Accordingly, I will dismiss Dale's claim for punitive damages, though without prejudice to his ability to seek such damages if he prevails on his RESPA claim and introduce evidence warranting a punitive-damages charge and verdict.

### Conclusion

It is, therefore,

ORDERED THAT:

1.     Dale's quiet-title claim be, and the same hereby is, remanded to the Common Pleas Court of Lucas County, Ohio;

2.     Defendants' motion to dismiss (Doc. 6) be, and the same hereby is, granted in part with prejudice, granted in part without prejudice, and denied, as provided herein; and

3.     The Clerk of Court shall forthwith set this case for a telephonic status conference.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge

25