IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Michael E. Dale,      Case No. 3:15CV1762

       Plaintiff,

   v.      **ORDER**

Selene Finance LP, et al.,

       Defendants.

This is a case about alleged misconduct during state foreclosure proceedings.

Plaintiff, Michael Dale, sued defendants, Selene Finance LP ("Selene") and DLJ Mortgage Capital, Inc. ("DLJ") after losing his home in a foreclosure action. Plaintiff alleged violations of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601, *et seq*., the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq*., the Truth in Lending Act (TILA), 15 U.S.C. § 1601, *et seq*., and various state laws. This court previously dismissed all of plaintiff's claims, except for the RESPA and quiet-title claims. (Doc. 15).

Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1332(a)(1).[1]

Pending is defendants' motion for summary judgment (Doc. 19).

For the reasons that follow, I grant the motion.

---

[1] Dale is an Ohio citizen., DLJ is a citizen of Delaware and New York, and Selene is a citizen of New York and Pennsylvania. (Doc. 1 at 2; Doc. 14 at 1-2).

**Background**

Dale purchased a home in Toledo, Ohio in 2005 and executed a promissory note and mortgage to secure the property. After he defaulted in 2008, GMAC Mortgage LLC filed a foreclosure action against Dale in the Lucas County Common Pleas Court. GMAC ultimately dismissed this action and transferred the note and mortgage to U.S. Bank.

In September, 2012, U.S. Bank, which claimed ownership of the note and mortgage, brought its own foreclosure action against Dale. *U.S. Bank v. Dale, et al.*, No. CI-201205389 (Lucas Cnty. Common Pleas Ct.).[2] To support its claim, U.S. Bank submitted an affidavit from Green Tree Servicing, LLC, the entity it enlisted to service Dale's loan. The affidavit identified U.S. Bank as possessor of the original note and mortgage.

While that action was pending, Dale received a Servicing Transfer Information ("STI") letter from defendant Selene in June, 2013. The letter stated Selene was the new servicer of his loan, and defendant DLJ, rather than U.S. Bank, was the owner and possessor of the note and mortgage. Dale asked U.S. Bank and Selene for information establishing the chain of title, location, and existence of the note, but their responses were inadequate to resolve the ownership issue.

In April, 2013, Dale applied for a loan modification. Selene received his application and determined Dale's loan was not eligible for modification.

With Dale's loan-modification application pending, U.S. Bank moved for summary judgment. The Common Pleas Court granted the motion in October, 2013. Dale did not appeal.

---

[2] I have taken judicial notice of the docket entries in the underlying foreclosure case to confirm the fact and dates of various filings. *Beair v. Ohio Dep't of Rehab.*, 156 F. Supp. 3d 898, 904 (N.D. Ohio 2016).

2

The next month, Dale moved to vacate the foreclosure judgment. In March, 2014, Dale filed an amended motion to vacate. The Common Pleas Court denied that motion in May, 2014. Dale did not appeal the denial of his Rule 60(B) motion.

In June, 2014, Dale moved to dismiss and void the foreclosure judgment. The Common Pleas Court denied this motion, and the Court of Appeals of Ohio dismissed Dale's appeal.

In September, 2014, U.S. Bank purchased Dale's former home at a sheriff's sale.

Based on these events, Dale filed this suit in state court in July, 2015, alleging his federal claims under RESPA, FDCPA, TILA, and the 2012 National Mortgage Settlement. Additionally, Dale brought state civil conspiracy, fraud, and quiet-title claims. Finally, Dale alleged that defendants' employees and agents were liable for these violations on a respondeat superior theory and that he was entitled to punitive damages.[3]

Selene and DLJ removed the case to this court and then filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). I dismissed all claims, except for plaintiff's RESPA claim, which remains in this court, and quiet-title claim, which I remanded to state court.

The gravamen of Dale's remaining RESPA claim is that Selene failed adequately to respond to his Qualified Written Requests ("QWRs").

In the STI letter described above, Selene had designated an address to which any QWR must be sent: "Selene Financial LP, Attention Customer Service Department, P.O. Box 422039, Houston, TX 77242-4239." Dale sent two letters to Selene – on February 18, 2014 and June 25, 2014 – and claims those letters were QWRs.

---

[3] Dale withdrew a second RESPA claim and a claim under the Ohio Consumer Sales Practices Act. (Doc. 9).

3

Dale sent the first letter to Selene at "9990 Richmond Avenue, South Houston, TX 77042-8500" – an addressed ascertained from Selene's website – instead of the address Selene had designated in the STI letter as the address to which to send QWRs. On February 25, 2014, Selene sent Dale a letter acknowledging his February 18, 2014 letter. On March 12, 2014, Selene provided a written response with a brief chronology of the loan's history and several documents. That letter also provided information about the name of the current holder of the loan and advised Dale that Selene could not provide certain information or documents.

Dale also sent his second letter to "9990 Richmond Avenue, South Houston, TX 77042-8500." Selene acknowledged receipt of that letter on July 3, 2014. On July 21, 2014, Selene provided a written response. Selene noted its previous response to Dale's first letter and enclosed a copy of the March 12, 2014 response letter. The letter also provided the name of the current holder of the loan, as well as a copy of the recorded mortgage assignment to the current mortgagee.     Plaintiff now alleges defendant Selene failed to comply with 12 C.F.R. § 1024.35's requirements for designating an address for borrowers to send QWRs, and, therefore, Selene had a duty to respond to his letters. Plaintiff further alleges defendant Selene failed to meaningfully respond *per* RESPA to his QWRs.

According to defendants, Selene had no duty to respond to plaintiff's purported QWRs because he sent them to an address other than the one designated in the STI letter. In the alternative, defendants argue even if receipt of plaintiff's letters triggered a duty to respond, Selene's response was proper.

**Standard of Review**

Summary judgment is appropriate under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323.

Once the movant meets that initial burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

I accept the non-movant's evidence as true and construe all evidence in its favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992).

**Discussion**

RESPA requires servicers of federally related mortgage loans to respond in a certain amount of time and certain way to a borrower's QWR for information relating to the servicing of the borrower's loan. 12 U.S.C. § 2605(e).

A QWR is correspondence that "identifies a borrower's account and 'includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.'" *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 181 (2d Cir. 2014) (quoting 12 U.S.C. § 2605(e)(1)(B)(ii)).

"Under RESPA, a servicer of a 'federally related mortgage loan' may be liable for damages to a borrower if it fails to adequately respond to a qualified written request[.]" *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1145 (10th Cir. 2013).

5

Plaintiff alleges defendants violated RESPA by failing properly to designate an address for borrowers to send QWRs. Specifically, the vehicle for plaintiff's RESPA claim is that defendant Selene violated 12 C.F.R. § 1024.35. Plaintiff is correct that § 1024.35 requires a servicer that designates an address for receipt of notices of error to post the designated address on any website the servicer maintains if the website lists any contact address for the servicer. Selene's defense, however, is that this regulation did not become effective until January 10, 2014. Because § 1024.35 was not in effect at the time Selene designated its QWR address to plaintiff, defendants argue plaintiff's RESPA claim must fail.

### A. 12 C.F.R. § 1024.35 Does Not Apply Retroactively

"Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect *unless their language requires this result*." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) (emphasis added).

The Supreme Court set forth a two-part test for determining whether a statute or regulation should apply retroactively to conduct that preceded its enactment.

> We first look to whether Congress has expressly prescribed the statute's proper reach, and in the absence of language as helpful as that we try to draw a comparably firm conclusion about the temporal reach specifically intended by applying our normal rules of construction. If that effort fails, we ask whether applying the statute to the person objecting would have a retroactive consequence in the disfavored sense of affecting substantive rights, liabilities, or duties [on the basis of] conduct arising before [its] enactment. If the answer is yes, we then apply the presumption against retroactivity by construing the statute as inapplicable to the event or act in question owing to the absen[ce of] a clear indication from Congress that it intended such a result.

6

*Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 37-38 (2006) (internal citations and quotation marks omitted); *see also Campbell v. Nationstar Mortg.*, 611 F. App'x 288, 296 (6th Cir. 2015) (applying *Fernandez-Vargas*); *BellSouth Telecomms., Inc. v. Se. Tel., Inc.*, 462 F.3d 650, 657 (6th Cir. 2006) (same).

The Sixth Circuit has not addressed whether § 1024.35 applies retroactively. Recently, however, the Sixth Circuit held that § 1024.41 does not apply retroactively. *Campbell*, *supra*, 611 F. App'x at 295-98. The *Campbell* court addressed a different section of Regulation X, and the facts are distinct from those here. Yet, the *Campbell* court's application of the *Fernandez-Vargas* test is relevant because the court analyzed Regulation X as a whole to reach its conclusion.

With respect to the first inquiry, the *Campbell* court concluded the regulation's effective date "reflects an intent not to apply it to conduct occurring prior to that date." *Id.* at 297. The court continued, "It seems unlikely that the CFPB intended to retroactively apply the rule after establishing a later effective date in large part based on industry concerns that compliance prior to that date was not possible." *Id.*

Further, the *Campbell* court recognized the Consumer Financial Protection Bureau's (CFPB) intent to coordinate the effective date of amended Regulation X with other CFPB regulations, namely the Title XIV Final Rules issued to implement the Dodd-Frank Act. *Id.* The CFPB unambiguously disclaimed retroactive application of the Title XIV Final Rules. *Id.* Thus, according to the *Campbell* court:

> It makes sense . . . that if the CFPB believed that it could facilitate implementation by setting the same effective date for both the Mortgage Servicing Rules [Regulation X] and the Title XIV Final Rules, it also would choose to align the two sets of rules with respect to prospective application so that the subjects of the new regulation knew a date certain by when all new CFPB regulations went into effect.

*Id.* at 297-98.

The *Campbell* court then analyzed the second step of the *Fernandez-Vargas* test and concluded retroactive application would both "increase a party's liability for past conduct, [and] impose new duties with respect to transactions already completed." *Id.* at 298 (internal citations and quotation marks omitted). Those "new legal consequences," according to the Sixth Circuit, should not attach to events occurring before the regulation's enactment. *Id.*

Simply put, the Sixth Circuit affirmed the district court's ruling against retroactive application because Regulation X included a specific effective date, and retroactive application would improperly impose new substantive duties on already completed foreclosures. *Id.* at 296-98; *see also Ray v. U.S. Bank Nat'l Ass'n*, 627 F. App'x 452, 456 (6th Cir. 2015) (affirming dismissal of a § 1024.41 claim because the regulation was not in effect at the time of the foreclosure sale of plaintiff's home and does not apply retroactively).

Applying the same analysis to this case, I hold § 1024.35 does not apply retroactively to Selene's designation, which occurred about seven months before § 1024.35's effective date.

As to the first inquiry, I apply the Sixth Circuit's interpretation of the CFPB's intent for the regulation not to apply to conduct occurring prior to the January 10, 2014 effective date. *Campbell, supra,* 611 F. App'x at 297-98; *see also Lage v. Ocwen Loan Servicing LLC*, 145 F. Supp. 3d 1172, 1186 (S.D. Fla. 2015) ("By imposing an effective date of January 10, 2014, the CFPB intended to institute a clear starting point with respect to when a servicer's obligations under Regulation X would be triggered.").

The second part of the *Fernandez-Vargas* test also supports the conclusion that § 1024.35 should not apply retroactively. If I retroactively applied § 1024.35 in this case, it would have a

"retroactive consequence in the disfavored sense of affecting substantive rights, liabilities, or duties [on the basis of] conduct arising before [§ 1024.35's] enactment." *Fernandez-Vargas, supra,* 548 U.S. at 37. Retroactive application of § 1024.35 would impermissibly render Selene liable for failing to include the designated address on its website despite having complied with the then-existing notice requirements for designating a QWR address to plaintiff.

Therefore, I conclude § 1024.35 does not apply retroactively.

### B. Defendant Selene Complied with 25 C.F.R. § 3500.21 and Did Not Have a Duty to Respond to Dale's Purported QWRs

Because § 1024.35 did not become effective until after defendant Selene notified plaintiff of the designated address for QWRs and the regulation does not apply retroactively, the law governing the designation of QWR addresses in effect at the time of Selene's designation applies. That law is 25 C.F.R. § 3500.21(e).

Under § 3500.21(e)(1), a loan servicer "[b]y notice either included in the Notice of Transfer or separately delivered by first-class mail" was allowed to "establish a separate and exclusive office and address for the receipt and handling of qualified written requests."

As I stated in the order dismissing plaintiff's other claims, "The final rulemaking notice for the operative regulation, Regulation X, explained that if a servicer establishes a designated QWR address, 'then the borrower must deliver its request to that officer in order for the inquiry to be a [QWR].'" *Dale v. Selene Finance LP*, 2016 WL 1170772, *8 (N.D. Ohio) (quoting *Roth*, *supra*, 756 F.3d at 181).

Most courts have reached a similar conclusion, finding that "under § 3500.21(e)(1), the [servicer's] response obligation under RESPA is *only* triggered when the QWR is sent to the

9

designated address." *McMillen v. Resurgent Capital Servs., L.P.*, 2015 WL 5308236, *6 (S.D. Ohio) (internal citation and quotation marks omitted); *see also Roth, supra*, 756 F.3d at 182 ("As long as a servicer complies with the notice requirements of 24 C.F.R. § 3500.21 for designating a QWR address, a letter sent to a different address is not a QWR . . . ."); *Berneike*, *supra,* 708 F.3d at 1149 ("Receipt at the designated address is necessary to trigger RESPA duties . . . ."); *Jestes v. Saxon Mortg. Services, Inc.*, 2014 WL 1847806, *6 (M.D. Tenn.). As the Tenth Circuit noted, an alleged QWR sent to the non-designated address "amounts to nothing more than general correspondence between a borrower and servicers." *Berneike, supra,* 708 F.3d at 1148-49.

Thus, so long as Selene's designation satisfied § 3500.21's requirements, plaintiff's RESPA claim fails as a matter of law if he cannot demonstrate he sent his letters to the designated address.

Selene's June, 2013 letter stated: "If you want to send a 'qualified written request' regarding the servicing of your loan, it must be sent to Selene Finance LP, Attention Customer Service Department, P.O. Box 422039, Houston, TX 77242-4239." (Doc. 19). This letter fully complied with the requirements imposed by § 3500.21(e) to designate a QWR address.

As is clear on the face of both letters, plaintiff failed to use the designated address when sending the purported QWRs. In fact, plaintiff does not dispute the fact that he submitted both letters to an address other than the one specifically designated by Selene in the 2013 STI letter.[4] Instead, plaintiff only contends that Selene violated § 1024.35 by failing to include the designated QWR address on its website where it maintained other contact addresses.

---

[4] Plaintiff sent both the February 18, 2014 and June 25, 2014 letters to "Selene Finance, Attn: Escalation Agent, 9990 Richmond Avenue, Suite 400, South Houston, TX 77042-8500.

As noted above, however, the relevant designation occurred prior to § 1024.35's effective date, so the requirements imposed by this section are not retroactively applicable. Under § 3500.21(e), because Selene properly designated a QWR address under § 3500.21(e), plaintiff needed to send any QWR to that address; his failure to do so is fatal to his RESPA claim.

Even assuming § 1024.35 applied, I am not persuaded by plaintiff's reliance on this regulation. At all relevant times, plaintiff had notice of the designated address from the unambiguous language in the STI Letter. This fact negates any argument that the missing address from Selene's website caused plaintiff to send the letters to the incorrect address. Further, plaintiff raises the alleged § 1024.35 violation for the first time in his opposition brief; there is no mention of § 1024.35 anywhere in the plaintiff's complaint or previous motions.

Plaintiff also argues, in the alternative, that defendants had a duty to respond because Selene received his letters, even though he sent them to the wrong address. This is simply not so. First, plaintiff cites to no authority to support this assertion. Further, as the above cases show, Selene's response obligation under RESPA is only triggered when plaintiff sends a QWR to the designated address. *See, e.g., McMillen*, *supra,* 2015 WL 5308236; *Roth, supra*, 756 F.3d 178; *Berneike, supra*, 708 F.3d 1141. Plaintiff sent the letters to the non-designated address at his own peril, and his attempt to later rely on § 1024.35 is not well-taken.

Simply put, no genuine issue of material fact remains with respect to whether plaintiff submitted the purported QWRs to the designated address. Because plaintiff admittedly failed to send his letters to the designated address, Selene's response obligations under RESPA were never "triggered." *See Berneike, supra,* 708 F.3d at 1149.

Therefore, defendants did not violate RESPA and are entitled to summary judgment as to plaintiff's RESPA claim[5]

## Conclusion

Because there is no genuine issue of material fact as to whether defendants had a duty to respond to plaintiff's qualified written requests, summary judgment is warranted.

It is, therefore,

ORDERED THAT: defendants' motion for summary judgment (Doc. 19) be, and the same hereby is, granted.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge

---

[5] Because I grant summary judgment based on the fact that defendant Selene had no duty to respond to plaintiff's purported QWR, I need not address plaintiff's second argument that defendant Selene failed to meaningfully respond to his QWRs.